5530/Compt

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.

BISCAYNE TOWING & SALVAGE, INC.,

    Plaintiff,

vs.

M/Y "ECJ LUXE", its engines, boats, equipment,
machinery, furnishings, apparel and appurtenances,
etc., *in rem*, and CHAIRMAN YACHTS, LLC,
*in personam*,

    Defendants.
_____/

## VERIFIED COMPLAINT FOR SALVAGE AND DEMAND FOR ARBITRATION

COMES NOW the Plaintiff, BISCAYNE TOWING & SALVAGE, INC., and for its Complaint for Maritime Salvage against the M/Y "ECJ LUXE", *in rem*, and CHAIRMAN YACHTS, LLC, *in personam*, and alleges as follows:

1. This is a case of admiralty and maritime jurisdiction, within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and pursuant to 28 U.S.C. 1333.

2. Plaintiff, BISCAYNE TOWING & SALVAGE, INC. (hereinafter "BISCAYNE"), is a Florida corporation with its principal business office in Miami-Dade County, Florida.

3. The *in personam* Defendant, CHAIRMAN YACHTS, LLC, is a Florida limited liability company with its principal address in Boca Raton, Florida, and is the owner of the Yacht M/Y "ECJ LUXE" at the time at issue.

4. The *in rem* defendant vessel, M/Y "ECJ LUXE", is a 2001 Leopard Motor Yacht 88, US

1

        Coast Guard Official Number 1256788. The Yacht has engines, boats, equipment, machinery, furnishings, apparel and appurtenances, etc. All of the foregoing are hereinafter known as the "Yacht".

5. The Yacht is presently located on the Miami River within the Southern District of Florida.

6. This is an action to foreclose a maritime lien, according to the general maritime laws, statutes and treaties of the United States.

7. The events described herein took place in navigable waters of the United States, in Miami-Dade County, Florida.

8. All conditions precedent to bringing this action have occurred, have been performed or have been waived.

9. BISCAYNE is engaged in the business of towing, rescuing, and salvage of vessels. BISCAYNE maintains waterfront facilities for these services in Miami, Florida. BISCAYNE is affiliated with a national vessel towing service known as TowBoat U.S.

## Salvage Event and Claim

10. At approximately 1:25pm on February 4, 4017, Captain Jeff Hamilton of BISCAYNE responded to a call that the M/Y "ECJ LUXE" was taking on water and sinking in the channel outside of Sunset Harbour Yacht Club near Venetian Islands.

11. Capt. Hamilton arrived on scene at approximately 1:40pm and saw that the swim platform in the stern of the yacht was approximately three feet underwater.

12. Captain Peter Hargreaves of BISCAYNE was already on scene and maneuvering close to the yacht to place a pump on board.

13.     At the time, the yacht was also being assisted by another salvor, Fast Response, and, upon information and belief, a Miami-Dade Fire Rescue boat.  However, it was clear that their assistance was inadequate.

14.      The Captain of the yacht, Aaron Brown, entered into the attached salvage contract with Biscayne Towing on behalf of the yacht and its owner.  See Exhibit A.

15.     Capt. Hamilton and Capt. Hargreaves proceeded to place two pumps on board at the stern of the vessel and immediately began to dewater the yacht.

16.     It was discovered that the engines of the yacht were submerged and not functioning leaving the yacht immovable on its own and a hazard to navigation.

17.     Another vessel from Biscayne Towing arrived then on scene under the command of Capt. Pete Dominguez at approximately 1:45pm and he placed another pump on board making three pumps total.

18.     At approximately 2:45 pm most if not all of the water was pumped out of the yacht.

19.     At approximately 3:00pm, Captain Will Stein of  Biscayne Towing arrived on scene with the Island Hopper towboat and towed the yacht to Biscayne Towing's dock facility with the assistance of Capt. Hargreaves' vessel in the rear.

20.     The actions of Biscayne Towing directly prevented the M/Y "ECJ LUXE" from becoming a total loss (constructive or actual).  The yacht remains safely moored at Biscayne Towing's facility to this day incurring daily dockage and custodial charges.

19.     The amount of the claim by BISCAYNE against the M/Y "ECJ LUXE" and its owner is $95,000 plus interest, court costs, expenses and attorney fees, based upon the factors for maritime salvage set forth in the International Convention of Salvage, 1989 (SALCON 89).

20.     BISCAYNE has presented its salvage claim to the owner and the yacht captain and

demanded security from the owner and/or insurer of the Yacht, but no response has been received from the owner or yacht captain and no security arrangements have been made to date. The yacht's insurer has advised that there is likely no insurance coverage for this salvage claim.

21. A maritime lien claim for salvage services is within the exclusive jurisdiction of the United States District Court.

22. Alternatively, BISCAYNE claims against the *in personam* Defendant and the Yacht for breach of the salvage contract, quantum meruit and/or unjust enrichment for the services rendered to the yacht.

23. BISCAYNE also claims attorney fees from the Defendants under the salvage contract and the general maritime law for bad faith in failing to pay this claim.

24. In order to protect its interests, particularly as to its *in rem* claim, BISCAYNE requests that this Court order the arrest of the Yacht pursuant to the rules of this Court.

## **DEMAND FOR ARBITRATION**

25. Paragraph 6 of BISCAYNE's "Standard Form Yacht Salvage Contract," attached as Exhibit "A," states:

> In the event of any dispute regarding this salvage or concerning the reasonableness of any fees or charges due hereunder, all parties agree to binding local arbitration utilizing individual(s) experienced in maritime and salvage law. The BOAT/U.S. Vessel Salvage Arbitration Plan, though not required, is available as a public service through Boat Owners Association of The United States wherever the parties agree to its use. In the event Owner is uninsured for payment of these services, Salvor may, at its election, agree with Owner to use any agreeable arbitration system or to proceed with all available legal remedies to recover sums believed due and owing.

26. BISCAYNE hereby invokes the arbitration provision of the salvage contract and respectfully request that this Court direct the parties to proceed promptly with arbitration once adequate security is posted, while the Court maintains jurisdiction for any further

      action which may be required.

27. In order to protect its interests, particularly as to its *in rem* claim, BISCAYNE requests that this Court order the arrest of the Yacht pursuant to the rules of this Court, order the defendant to post adequate security in order to procure the release of the yacht, order the parties to arbitration, and any other relief the Court deems just and proper.

WHEREFORE, Plaintiff prays:

a) That process be issued according to the rules and practice of this Court in causes of admiralty and maritime jurisdiction against the M/Y "ECJ LUXE", its engines, boats, equipment, machinery, furnishings and appurtenances, etc, *in rem,* and against Defendant CHAIRMAN YACHTS, LLC *in personam*, citing them to appear and answer all and singular the matters aforesaid;

b) That the M/Y "ECJ LUXE", its engines, boats, equipment, machinery, furnishings and appurtenances, etc, *in rem,* be arrested and sold by this Court according to the rules and practice of this Court in admiralty and maritime actions;

c) That the Parties be sent to Arbitration and thereafter a judgment *in personam* and in *rem* be entered against Defendants, jointly and severally, for the amount of Plaintiffs' claims, with interest, costs, expenses and attorney fees;

d) That Plaintiff has such other relief as may be justified.

February 28, 2017
Miami, Florida

Respectfully submitted,

By: **/s/Michael C. Black**
_____
MICHAEL C. BLACK
F.B.N.  0056162
mblack@marlaw.com
CASSIDY & BLACK, P.A.
7700 N. Kendall Drive
Suite 505
Miami, FL 33156
Tel:  305-271-8301
Fax: 305-271-8302
*Counsel for Plaintiff*

5530/Verification

## VERIFICATION OF COMPLAINT

STATE OF FLORIDA        }
                        } ss.
COUNTY OF MIAMI-DADE    }

BEFORE ME, the undersigned authority, personally known to me personally appeared HARRY C. OFFUTT, IV, who after first being duly sworn on oath deposes and says, that he is the President of BISCAYNE TOWING & SALVAGE, INC. and that he has read the foregoing Complaint Under Rule 9(h) and knows the content thereof, and that the same is true to the best of his knowledge, information and belief. That the source of Affiant's information and the grounds for his beliefs are documents and records furnished to him by the Plaintiff, with those documents being standard in the industry.

That your Affiant has been authorized to so act.

FURTHER AFFIANT SAYETH NAUGHT.

HARRY C. OFFUTT, IV
President, Biscayne Towing & Salvage, Inc.

SWORN TO AND SUBSCRIBED before me this 28th of February, 2017.

NOTARY PUBLIC, State of
Florida at Large

My Commission Expires:

MICHAEL C. BLACK
Commission # GG 013188
Expires September 26, 2020
Bonded Thru Troy Fain Insurance 800-385-7019

1

**BOAT/U.S.**
**STANDARD FORM SALVAGE CONTRACT**

It is hereby agreed this __4__ day of __February__ (month), 20__17__, at __1422__ (time) hours at _____ by and between:
__aaron Brown__ (casualty's owner or captain)
for the Vessel named "__ec3 luxt__," (casualty's name) which is described as a __leopard 27 open__ (description)
and Biscayne Towing & Salvage, Inc., to salvage the vessel under these terms and conditions:

1. Salvor agrees to render assistance to and endeavor to save said vessel and its property and deliver her afloat or ashore at ~~GtG~~ _____ marina or port as mutually agreed, or to nearest safe port if unspecified herein, as soon as practicable.

2. Salvor shall have the requisite possession and control of the subject vessel and be entitled without expense to the reasonable use of the vessel and its gear in the performance of recovery or salvage operations.

3. Said salvage and any towage services by the Salvor shall terminate upon delivery of said vessel as designated herein. Owner and Underwriter shall be responsible for any storage, towing or other port or marina charges following delivery and for risk of loss thereafter.

4. Compensation to Salvor for the services performed hereunder shall be in accordance with a billing and any supportive analysis of the salvage operation to be presented to Owner and Underwriter's agents upon completion of salvage. Billing will be on the basis of time and equipment rates as usually charged by Salvor or flat contract price or a reasonable amount in relation to post-casualty, pre-repair, fair market value of the vessel. Billian may include, where appropriate, reasonable cost of pollution containment or clean up. No agreement on price or its reasonableness has been made at the scene unless agreed to in writing.

5. Services hereunder are rendered on a "No Cure, No Pay" basis; however, salvor shall be entitled to a reasonable allowance for prevention or minimization of environmental damage in accordance with Articles 13 & 14 of the 1989 International Convention on Salvage, as well as for clean up or wreck removal in the event the vessel is deemed a constructive total loss. Payment is due promptly upon presentation of Salvor's bill. Interest at the rate of one and one-half (1.5%) percent per month (or the maximum legal rate allowed) shall accrue on any unpaid balance from 30 days after completion of salvage and presentation of a salvage bill, or as determined in accordance with the findings of any Arbitration Award.

6. In the event of any dispute regarding this salvage or concerning the reasonableness of any fees or charges due hereunder, all parties agree to binding local arbitration utilizing individual(s) experienced in maritime and salvage law. The BOAT/U.S. Vessel Salvage Arbitration Plan, though not required, is available as a public service through Boat Owners Association of The United States wherever the parties agree to its use. In the event Owner is uninsured for payment of these services, Salvor may, at its election, agree with Owner to use any agreeable arbitration system or to proceed with all available legal remedies to recover sums believed due and owing.

**Exhibit "A"**

7. It is understood that services performed hereunder are governed by the Admiralty and Maritime Jurisdiction of the Federal Courts and create a maritime lien against the vessel or its posted security. Salvor's lien shall be preserved until payment. Salvor agrees in lieu of arrest or attachment to accept from the vessel's Underwriter, a Letter of Undertaking for an amount equal to one and one-half (1.5) times the presented billing with a copy of the insurance policy and coverage information. If the vessel is uninsured or its Underwriter cannot provide a Letter of Undertaking, Salvor may demand the posting of a Surety Bond with its designated Escrow Agent in an amount equal to 1.5 times the Salvor's bill. Salvor may satisfy collection of fees or charges hereunder by recourse to any security posted and shall be entitled to any costs incurred in collection of payments due hereunder including reasonable attorneys fees subject to the findings of any arbitration.

8. Salvor hereby warrants that it is acting on its own behalf and on behalf of any subcontractors retained by Salvor to perform services in the recovery or delivery of the vessel. Salvor shall be responsible for any such subcontractors' compensation.

9. In the event the Salvor has already rendered salvage services to the described vessel prior to execution of this contract, the provisions of this contract shall apply to such salvage services.

_____
Signature Salvor

Jeff Hamilton
Print Name

Biscayne Towing & Salvage, Inc.
1635 North Bayshore Drive
Miami, FL 33132
Tel: 305-358-1486
Fax: 305-373-8453

Fl 3782 PK

_____
Signature Owner/Captain

AARON Brown
Print Name

ECJ LUXE
Vessel Name

Street: 879 Coventry
City, State, Zip: Boca Raton
Phone: 954-709-1725
Fax: _____